EZRA L. OURSLER ᴇᴛ ᴀʟ. *v.* J. MILLARD TAWES,
COMPTROLLER

[No. 57, April Term, 1940.]

472

*Decided June 12th, 1940.*

The cause was argued before OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*George V. Parkhurst* and *J. Morfit Mullen,* for the appellants.

474

*William C. Walsh, Attorney General,* and *William L. Henderson, Deputy Attorney General,* with whom was *Norwood B. Orrick, Assistant Attorney General,* on the brief, for the appellee.

*Hall Hammond,* by permission, filed a brief as *amicus curiae.*

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court of Baltimore City passed on March 1st, 1940, dismissing the bill of complaint, filed by individual citizens and residents of the state under the provisions of chapter 294 of the Acts of 1939, known as the Uniform Declaratory Judgments Act, praying a decree declaring section 12 of chapter 277 of the Acts of 1939 unconstitutional and invalid.

Section 12 of the above Act repeals sections 215 to 251 inclusive of article 81 of the Annotated Code of Maryland (1935 Supplement), title "Revenue and Taxes," subtitle "Income Tax," and enacts, in lieu thereof, thirty-seven new sections to be known as sections 215 to 251, and to follow immediately after section 214 of said article.

In substance the bill of complaint sets forth that the complainants are husband and wife; that they resided together in the City of Baltimore during the year 1939; that during said year the husband operated a used car business from which he realized a net profit of $860.56; that the complainants own jointly, and in some instances individually, various dwellings, ground rents and mortgages from which, during the taxable year 1939, they received as net income from said dwellings the sum of $905.66, income from said ground rents the sum of $838.09, and income from said mortgages the sum of $924.83. That under the provisions of the act, the constitutionality of which they challenge, they are required to pay an income tax at the rate of two and one half per cent on their ordinary income, representing income

from rents of real estate owned and income from trade or business, and at the rate of six per cent on their investment income; less, however, a credit at the rate of two and one half per cent on a personal exemption of $2000 allowable, under the act, to a husband and wife who unite in an income tax return.

The complainants further submit that by chapter 525 of the Acts of 1937, the Legislature of Maryland proposed an amendment to article 15 of the Declaration of Rights of the Constitution of Maryland, authorizing the General Assembly to impose taxes on incomes, and providing for the submission of said amendment to the qualified voters of the state for adoption; which amendment was submitted to, and defeated by, popular vote at the general election held on November 8th, 1938. And finally, it is alleged that section 12 (article 81, sections 215 to 251, inclusive), as enacted by chapter 277 of the Acts of 1939, and especially sections 218, 221, 222, 223, and 227 pertaining thereto, are unconstitutional and void as being repugnant to the 14th Amendment to the Federal Constitution, and to articles 15 and 23 of the Declaration of Rights of the Maryland Constitution; in that the said act is arbitrary and discriminatory in the classification of property, individuals, corporations, and income; that it provides for the taxing of property and income without due process of law, and is in direct violation of the mandate of the people as expressed by the popular vote to which reference has been made.

The answer substantially admits all allegations of the bill, other than those which allege the unconstitutionality of the Act, to the effect that the same is repugnant to the 14th Amendment of the Constitution of the United States and repugnant to, or in conflict with, articles 15 and 23 of the Declaration of Rights or the Constitution of the State of Maryland. As a corollary to that denial, the answer submits that the Income Tax Act is not arbitrary or discriminatory, in a constitutional sense, as alleged, or that it provides for the taxing of property and income without due process of law. Further an-

swering, it is submitted that the defeat of the constitutional amendment, as set forth in the bill of complaint, by a vote of the citizens of the State of Maryland in 1938, can in no manner be construed to restrict or limit the power of the Legislature of said State to pass laws in conformity with the Declaration of Rights and Constitution of Maryland, as duly approved and adopted by the people of Maryland.

A stipulation in the record concedes the facts bearing upon the status of the complainants as income taxpayers, and, among other things, submits that, of the ground rents owned by the complainants, one of them was created by a lease dated November 30th, 1936, by the said complainants to the York Road Building Association of Baltimore City, which provides that the demised premises be held by the lessee, its successors and assigns, for the term of ninety-nine years, at an annual rent of sixty dollars, over and above all deductions for taxes and assessments of every kind levied or assessed, or thereafter to be levied or assessed, on said premises or the rent issuing therefrom; with a covenant on the part of the lessee and its successors to pay the lessor the aforesaid rent, taxes, and assessments when legally demandable; that in the case of all other ground rents owned by the complainants, they are not the original lessors of the property but are either assignees of the original lessor or have acquired the reversionary interest through mesne conveyances, And that among said ground rents, all of which issue out of properties located in said city, is one created June 1st, 1937, in a lease from the Northeast Realty Company to Harry M. Schockett, Sr., the covenants in said last mentioned lease being identical with those in the lease to which reference is above made; the only difference, involved in the question respecting the same, being that in the latter lease, the complainants are assignees of the Northeast Realty Company, either directly or through mesne conveyances.

It may be here stated that the case of John K. Culver, Jr., against the same defendant as in this case, namely,

J. Millard Tawes, Comptroller of the Treasury of the State of Maryland, designated, as No. 58 Appeals of the April Term, 1940, of this court, and appealed from a decree similar to the decree from which the case now under consideration was taken, passed on the same date by the same chancellor, in the Circuit Court for Baltimore City, was argued in this court, and submitted on the same briefs as was the instant case. And that, except as to appropriate amendments, made necessary for the purpose of stating the facts incident to the case, the bill of complaint in the Culver case, and the answer thereto, are similar in detail, respectively, to those to which we have referred in the instant case. The stipulation in the Culver case shows sources of income and classifications thereof, upon which the income tax complained of is based, to be as follows:

1. Net income received by the trustees from the rental of improved property in Maryland and
   Georgia ....................$ 3,032.44
   Interest of the beneficiary (¼)     758.11

2. Gross Income received by the Trustee and classified as Investment income
   Interest on tax free covenant
   corporation bonds ............ $ 180.00
   Interest on Maryland mortgages   5,204.96
   Interest on contracts of sale...   6,273.28
   Interest on Georgia Mtg. ......   1,885.10
   Interest on Georgia Contracts of
   sale ........................   1,308.14
   Interest on notes receivable....   87.54
   Ground Rents owned in Md.....   620.00
   Taxable dividends ...........   1,276.25

                      $16,835.27
   Interest of the beneficiary (¼)     4,208.82

3. Deductions:

Tax on Maryland unimproved
land ...................... $ 1,584.80
Operating expense ........... 2,820.65
Administrators and Trustees ex-
penses .................... 2,882.59
_____
$ 7,288.04
Interest of the beneficiary (¼) 1,822.01

For reasons apparent, therefore, the two cases will be considered together.

No issue has been raised as to the form of procedure, nor is there any controversy as to the facts involved in the two cases. As has been indicated, therefore, the basic question submitted by both of said cases centers around the constitutionality of chapter 277 of the Acts of 1939, in so far as the same is designed to impose a tax on incomes in this state. In this connection two subsidiary questions are also raised, to wit: (1) Whether section 223 (c) of section 12 of the Act is invalid as impairing the obligations of a contract, in that it provides that no tax imposed under the provisions of said subtitle on any person with respect to ground rent received by him shall be collected from the lessee by the lessor, and renders void any agreement entered into between a lessor and a lessee providing for the payment of such tax by the lessee; furthermore, that the provisions of said subsection are not embraced in the title of the Act; and (2) that the Act violates the constitutional inhibition against the delegation of legislative authority, by virtue of the general administrative powers vested in the Comptroller of the State under its provisions.

Since the adoption of the Maryland Constitution of 1867, which, with successive amendments thereto, is the organic law of this state at the present time, there has been but one prior act passed by the General Assembly of the State, designed to adopt a general policy of imposing a tax on incomes. By that prior legislation, chap-

ter 11 of the Special Session of 1937, thirty-seven new sections were added to article 81 of the Annotated Code of Maryland (1935 Supplement), under a new subtitle known as "Income Tax"; in effect imposing a tax upon net incomes as defined by the act. That act, in so far as the same sought to tax incomes accruing from salaries of judges in this state, was held by this court to be in conflict with sections 24 and 31 of article 4 of the Maryland Constitution. *Gordy v. Dennis,* 176 Md. 106, 5 A. 2nd 69. And it was also originally held by this court to be unconstitutional as to income accruing from salaries of resident officers of the federal government. *Gordy v. Prince,* 175 Md. 519, 2 A. 2nd 692, but nevertheless, upon reargument, because of a subsequent decision of the Supreme Court of the United States, in the case of *Graves et al. v. New York ex rel. O'Keefe,* 306 U. S. 466, 59 S. Ct. 595, 83 L. Ed. 927, this holding was reversed. *Gordy v. Prince,* 175 Md. 688, 7 A. 2nd 611.

Aside from the case of *Gordy v. Dennis, supra,* taxes on net incomes appear to have been imposed and collected upon such incomes for the years 1937 and 1938, in this state.

As is indicated by the allegations of the bills in each case, the grounds upon which the constitutionality of the Act is attacked are based upon alleged discriminations, which mainly arise; (1) in classifications as to persons and corporate bodies, whose incomes are made the objects of the tax; (2) in differences as to the method of ascertaining the basis upon which the tax is computed as between the several classifications of taxpayers; (3) in variances in tax rates made applicable to such several classifications, including methods of computing such tax, as applied to such several classifications; and (4) in variances as to deductions and exemptions allowable to taxpayers coming under such classifications, respectively.

The design of the latter sections of chapter 277 is to separate the sources of income into two subdivisions: (a) "investment income," defined by the act to mean that portion of gross income which is derived from divi-

dends, ground rents, annuity income, and interest, from whatever source derived, other than certain allowable business interest exemptions; and (b) "ordinary income," defined as being that portion of gross income which is not investment income. Gross income is defined as income from whatever source derived, including salaries, wages or compensation for personal services of every kind, interest, dividends, rents, royalties and annuity income; gains, profits and income derived from professions, vocations, trades, businesses and commerce, other than certain allowable exemptions; and net income is defined as the gross income of the taxpayer, less deductions allowed by the act.

The Act imposes an annual tax on the net income of each resident individual of the state, and on the net income, taxable in the state, of every individual non-resident thereof; computed by adding six per cent of the "investment income" to two and one-half per cent of "ordinary income," and subtracting from the amount thus ascertained two and one-half per cent on the sum of allowable deductions, plus personal exemptions, namely, $1000 to a single person or a married person not living with the other spouse, $2000 to a married person living with the other spouse, and $400 for each dependent as defined in the act.

Corporations which do not come under the classes exempted from the provisions of the act are subject to a tax of one and one-half per cent on such portion of the net income of such corporations, either domestic or foreign, as is allocable to the state under special provisions relating to such allocation set forth in the act.

Obviously no deductions, such as allowed individual taxpayers for personal exemptions, are allowed in computing corporate income tax under the act. But, in the cases of fiduciaries subject to the tax, a personal exemption of $200 is allowed.

Numerous other details respecting ascertainment of sources of taxable income and exemptions, or deductions pertaining thereto, need not be herein set forth.

The theory of the appellants seems to rest upon alleged discriminations which it is urged have been arbitrarily made by the Legislature: (1) in severing the sources of income into two distinct classes and applying different rates, respectively, to the two classes for the purpose of computing the tax; (2) in designating the respective sources of income which the Act provides shall be construed as representing "investment income" and those which it defines as representing "ordinary income"; (3) in the deductions allowable under the Act, applicable to the respective sources of income; and (4) in the exemptions of all income accruing from some sources defined in the Act. In support of these contentions, various cases from courts of last resort in other states of the Union are cited in the carefully prepared briefs before us. It should be borne in mind, however, that state constitutional provisions with reference to the important and vital subject of raising revenue for the support of the respective state governments are by no means uniform, and that, while the decisions of the appellate courts of these states are helpful in reaching a conclusion in the instant cases, they are far from being in accord, and of course not controlling.

In 4 *Cooley on Taxation* (4th Ed.), sec. 1743, p. 3477, it is said: "There is considerable conflict of opinion as to how income taxes should be classified. Are they a property tax or are they an excise tax, or are they neither the one or the other, but instead a separate class standing by themselves? If they are to be deemed a property tax, constitutional limitations applicable to property taxes must be applied, thereby limiting the power of the Legislature. If they are excise taxes, such limitations are not applicable. So far as the federal income tax is concerned, it seems to be settled that the tax is an excise tax at least so far as the tax is based on income derived other than from property is concerned, although a tax on income accruing from property is held to be a 'direct' tax. In regard to state income taxes the law is not clear. Generally, however, it has been held

482

that the tax is not a tax on property, or at least is not such a tax as to be included in the constitutional limitations imposed on property taxes; but in some states, either because of the peculiar wording of constitutional provisions or otherwise, the contrary has been held at least as to income derived from property."

To whatever classification the species of income tax may belong, it is controlled by the basic principles which govern either excise or property taxation. The first of these is that, independently of constitutional provisions, and subject only to the limitations placed upon it by the Federal Constitution, the power of taxation is inherent in a sovereign state, because the right to tax underlies its own Constitution, and is not granted by it. Stated differently, the right may be regulated and limited by constitutional mandates, but it exists without express authority in the fundamental law as a necessary attribute of sovereignty.

Constitutional provisions relating to the power of taxation do not operate as grants of the power; but do constitute limitations upon a power in the government thus set up, which would be otherwise without limit. 26 *R. C. L., Taxation*, sec. 12; 61 *C. J., Taxation*, sec. 7.

In *Leonard v. Earle*, 155 Md. 252, 141 A. 714, it is said: "The powers of the Legislature are not derived from grants in the Constitution of the state, or, indeed, from any classifications made use of in discussions of exercises of power; plenary power in the Legislature for all purposes of civil government is the rule, a prohibition to exercise a particular power is an exception, and can be founded only on some constitutional clause plainly giving rise to it." See *Painter v. Mattfeldt*, 119 Md. 466, 87 A. 413; *Kenneweg v. Allegany County*, 102 Md. 119, 62 A. 249; *Marmet v. State*, 45 Ohio St. 63, 12 N. E. 463; *McLane v. State Tax Commn.*, 156 Md. 133, 143 A. 656.

What, therefore, were the constitutional limitations upon the Legislature of this State which enacted chapter 277?

First of all, it may be observed that the Federal Constitution has not undertaken to lay down any hard and fast rule with respect to due process of law, the equal protection of the laws, or as to privileges and immunities; and as tersely summarized in *Board of Commnrs. etc. v. Johnson County,* 173 Ind. 76, 89 N. E. 590, 593; " * * * Nor does the equal protection clause prevent the states from adjusting their systems of taxation in all proper and reasonable ways. * * * If all persons who are in like circumstances, or affected alike, are treated under the laws the same, there is no deprivation of the equal protection of the law. * * * Conversely, a law which operates upon some persons or corporations, and not upon others like situated or circumstanced or in the same class, is invalid. * * * So, classes of persons may be exempt from taxation upon reasonable grounds, or different kinds of property taxed in different ways. * * * Persons engaged in the same line of business may be classified, and different provisions applied to each class, without depriving any of them of the equal protection of the laws. * * * Corporations, individuals, wholesale and retail dealers, domestic and foreign corporations, may be separately classified, and taxed differently, so long as the constituent classes are treated alike. * * * Whether a statute is applicable to a large or small class is a legislative, and not a judicial question. * * * But taxation is not uniform, or equal, when it applies to a portion of a class, and omits a portion. * * * The classification itself must be based upon natural reasons, upon reasons which naturally inhere in the subject matter, upon real difference existing between the classes, and so as to produce no distinction between members of the same class."

Secondly: That article 23 of the Maryland Declaration of Rights is in harmony with the 5th and 14th Amendments to the Federal Constitution, and the term "due process of law," as used in said amendments, has been construed to be synonymous with the expression "law of the land" as used in said article. *Niles, Constitutional Law,* p. 46.

484

Thirdly: That article 15 of the Maryland Declaration of Rights, as amended by the Act of 1914, chapter 390, provides " * * * that the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and subclassifications of improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, and uniform within the class or subclass of improvements on land and personal property which the respecting taxing powers may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community."

Giving due force to the indicated inherent power of the Legislature as limited by constitutional provisions, both federal and state, to which we have referred, it is our conclusion that the enactment of chapter 277 was a valid and constitutional exercise of legislative authority. Holding this view, it would seem clear that the amendment proposed by chapter 525 of the Acts of 1937 was unnecessary. Moreover, the power vested in the Legislature at the time the amendment was proposed was neither destroyed nor weakened by an adverse vote of the people, for the obvious reason that the defeat of the amendment in no manner affected the then existing organic law of the state.

Abstract comparisons in the application of the many and varied provisions of the Act are urged by the appellants as establishing inequities in its practical effect. In some cases, it is submitted that sources of income accruing from property of one classification are subjected to a greater tax burden than are sources of income derived from property pertaining to another and separate classification. And it is argued that for that reason the effect of the Act is to impose an arbitrary and discrim-

inatory tax upon some taxpayers as compared with the tax burden which it places upon others. This situation, however, arises not as between taxpayers whose sources of income or situations are similar in that they accrue from property of like classification under the Act; but arises in cases where the sources of income accrue from property of separate and distinct classifications under the Act. In other words, a taxpayer whose various sources of income accrue from property separately classified, is subject to the same tax burdens, exemptions, and immunities under the law, as are incident, respectively, to the several property classifications from which his total income accrues. Nor are criticisms, leveled at the inequality of various exemptions allowable, based as they appear to be upon the various sources of income and situations of the respective objects of the tax, in our opinion well directed. To the contrary, it seems too firmly established to admit of discussion that the Legislature has the power to exempt from taxation any person, corporation, or class of property according to its views of public policy or expediency, provided always that no constitutional provisions are violated. *Jefferson Branch Bank v. Skelly,* 1 Black 436, 66 U. S. 436, 17 L. Ed. 173; *William S. Wilkins Co. v. Baltimore,* 103 Md. 293, 63 A. 562.

In connection both as to classifications and exemptions, it may also be observed that a different construction has been placed by this court upon the concluding paragraph of Article 15, from that placed upon the preceding paragraphs. The late Judge Alfred Niles, in his work on *Maryland Constitutional Law,* pages 32, 33, makes the following comment: "The last clause of the 15th article of the Declaration of Rights is considered as enlarging the taxing power of the legislature. And taxes laid under this enlargement of power are of a different class from 'property taxes' * * * The rule of equality is applicable to 'property taxes.' 'Taxes laid with a political view' are not 'property taxes' but are such taxes as the

Legislature may levy, not upon property, but upon occupations, privileges, contracts and things of that nature, and as to those the rule of equality is not applicable. * * * Summing up the rule and its exceptions, we may say, in a general way, that the courts, in construing this article, have separated the taxation which may be levied upon the inhabitants of Maryland into two kinds; the one, taxes upon the individual according to his property; the other, taxes laid with a political view for the good government and benefit of the community. As to taxes of the first class, the legislature is prohibited from taxing the same individual twice in regard to the same piece of property. * * * It may, however, exempt certain classes of property with a view to the good of the community, provided the classification is reasonable, and the exemption does not produce material inequality. * * * In regard to the second class * * * there seems to be no limitation laid upon the power of the Legislature by this article, except that such taxes are not to be laid upon property as such."

Examples of the application of the latter form of taxation are: (a) collateral inheritance tax, *Tyson v. State*, 28 Md. 577, 578; *State v. Dalrymple*, 70 Md. 294, 295, 17 A. 82; (b) tax on gross receipts, *State v. Philadelphia W. & B. R. R. Co.*, 45 Md. 361; *Cumberland & Pa. R. R. Co. v. State*, 92 Md. 668, 48 A. 503; *State v. U. S. Fidelity Co.*, 93 Md. 314, 48 A. 918; *State v. Central Trust Co.*, 106 Md. 268, 67 A. 267; *Postal Tel. Cable Co. v. Harford County*, 131 Md. 96, 101 A. 600; *Jones v. Gordy*, 169 Md. 173, 180 A. 272. See also *Blaustein v. Tax Commn.*, 176 Md. 423, 4 A. 2nd 861. Likewise examples of the application of the policy of exemptions are: *Buchanan v. Talbot County*, 47 Md. 286; *Brown v. State*, 177 Md. 321, 9 A. 2nd 209, and cases there cited. In the case of *Carmichael v. Southern Coal & Coke Co.*, 301 U. S. 495, 510, 55 S. Ct. 868, 872, 81 L. Ed. 1245, it is stated: "A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the

Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." *Colgate v. Harvey,* 296 U. S. 404, 56 S. Ct. 252, 80 L. Ed. 299; *Welch v. Henry,* 305 U. S. 134, 59 S. Ct. 121, 83 L. Ed. 87; *Jones v. Gordy, supra.*

Turning now to the subsidiary questions raised, we find no force in the contention that the Act is defective in that the subject matter of section 223 (c), and sections 235 and 250 of chapter 277, are not more specifically referred to in its title.

The title sets forth the repeal of all sections of the Code relating to the subject of income tax, and the enactment of new sections in lieu thereof under the subtitle "Income Tax"; and in our opinion conforms with the requirements of section 29 of article 3 of the Constitution. It has been held by this court that the latter section should be liberally construed, and that the title need not set out the details contained in the sections of the act. *Annapolis v. State,* 30 Md. 112, 118; *Bond v. State,* 78 Md. 523, 525, 28 A. 407.

Nor do we find illegal power vested in the Comptroller for the purpose of administering the act. As the executive officer in charge of the fiscal affairs of the State (section 2 of article 6 of the Constitution), extensive administrative powers must, in the very nature of the legislation now under consideration, be vested in him, and all the Act in effect does is to vest the Comptroller with authority inherently necessary for the practical execution of the duties imposed upon him by the various

provisions incident to the legislation. Such has been the policy pursued in the administration of previous revenue laws of the State, and we have been referred to no authority which would warrant our holding that the act is unconstitutional on the ground stated.

Turning now to the provisions of section 223 (c), which provides that no tax imposed on any person with respect to income from ground rents received by him shall be collected from the lessee by the lessor, and is designed to invalidate any agreement between such parties to the contrary, we are of the opinion that the effect of said section 223 (c) is to impair the obligation of a contract, and is therefore in conflict with article 1, section 10, of the Constitution of the United States. Accordingly we declare the same unconstitutional.

Section 23 of chapter 277 provides that if any one or more sections of the Act shall for any reasons be adjudged unconstitutional or invalid, such judgment shall not impair or invalidate the remaining provisions thereof, but shall be confined in its operation to the specific provisions so held unconstitutional or invalid.

For the reason that we reach the conclusion that section 223 (c) is unconstitutional, and that in all other respects chapter 277 of the Acts of 1939 is constitutional, the decree will be reversed in part and affirmed in part, and the case remanded for further proceedings, to the end that a decree may be passed in accordance with the views herein expressed.

> *Decree affirmed in part and reversed in part, and case remanded for further proceedings in accordance with the views herein expressed.*